IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARLOS PAGAN,**   Case 1:14 CV 1108

    Plaintiff,

    v.   Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.   MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Carlos Pagan filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 1383(c). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI on March 24, 2011, alleging an onset date of November 1, 2010. (Tr. 47, 122). Plaintiff applied for benefits due to lower back/nerve pain, stenosis, arthritis of the back, and scoliosis. (Tr. 47). His claim was denied initially (Tr. 47-54) and upon reconsideration (Tr. 56-67). Plaintiff requested a hearing before an administrative law judge ("ALJ") on February 14, 2012. (Tr. 82). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on August 8, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 8-18, 24-45). The Appeals Council denied Plaintiff's request for review, making

the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff filed the instant action on May 22, 2014. (Doc. 1).

## FACTUAL BACKGROUND

*Personal Background and Testimony*

Plaintiff was born on April 14, 1983 and was 27 years old at the time of filing for benefits. (Tr. 28). He had an associate's degree in Fine Arts and a driver's license. (Tr. 28-29). He had no prior work experience and lived in a house with his parents and brother. (Tr. 29, 33). Plaintiff testified he could attend to personal hygiene and sometimes performed light housework. (Tr. 34). He also stated he did not socialize or attend church, and had no hobbies. (Tr. 35). Most days he spent lying in his bed for approximately 18-20 hours a day and if he was not lying down he tried to walk and do physical therapy recommended exercises. (Tr. 34, 167).

Plaintiff testified he was unable to work because his "sciatic pain became too much". (Tr. 30). He stated the pain was constant and started in his back and shot down his right leg. (Tr. 30-31). On a ten point severity scale, the pain was usually a six or seven but would go up to a nine or ten. (Tr. 31). He testified bending, sitting, or standing for a while exacerbated his pain. (Tr. 31). He took Ultram for the pain and Lyrica for his nerves and stated they helped a little and there were no side effects. (Tr. 30). Plaintiff said surgery was not recommended at this time because of his age and a physical therapist had told him to get a cane. (Tr. 30-31). He did have a TENS unit but did not have it on at the time of the hearing. (Tr. 31).

He estimated he could walk, sit, or stand for no more than a half hour and said he avoided bending, stooping, or squatting because it hurt. (Tr. 32). He testified he had no problems with his fingers or hands but could probably only lift twenty pounds. (Tr. 32). He stated he had no

2

problems with his memory, crowds of people, dealing with strangers, or trouble breathing. (Tr. 33).

*Relevant Medical Evidence*

Yun-Lai Sun, M.D., Plaintiff's primary care physician from 2005 to 2012, noted back pain as a consistent complaint and prescribed Vicodin, physical therapy, and referred Plaintiff to a chiropractor, the latter two of which he refused. (Tr. 236, 237, 238, 240, 242, 257).

In September 2009, Plaintiff saw Santosh Thomas, D.O., for a follow-up from his facet injection which he reported reduced his pain by 80%. (Tr. 409). That same week, Plaintiff saw Douglas Orr, M.D., who reported he was "relatively functional in spite of symptoms" but his stenosis would require "extensive surgery to address." (Tr. 409). Dr. Orr recommended weight loss and physical therapy to relieve Plaintiff's pain. (Tr. 409).

Richard Schlenk, M.D., saw Plaintiff on referral from Dr. Thomas on November 12, 2010 due to worsening lower back pain extending into his left thigh. (Tr. 217). Plaintiff reported no improvement with conservative therapies such as NSAIDs, muscle relaxants, analgesics, physical therapy, and epidural blocks. (Tr. 217). On physical examination, Dr. Schlenk noted no pain on palpation, normal gait, and positive straight leg raise test on the left. (Tr. 218). Dr. Schlenk concluded Plaintiff had "significant spinal degeneration" but did not recommend surgery but rather weight loss to improve symptomology. (Tr. 219). A CT scan confirmed Dr. Schlenk's impression and found severe spinal canal stenosis at L5/S1 and multilevel degenerative formainal stenosis but noted there had been little progression of the disease since Plaintiff's last CT. (Tr. 226).

On February 1, 2011, Plaintiff saw Dr. Schlenk, for a follow-up regarding his lower back pain which extended into both legs to the mid-thigh. (Tr. 214). On examination, his gait was

3

normal, he was able to walk heel/toe with pain, and he had a positive straight leg raise test on the right. (Tr. 214). Dr. Schlenk noted Plaintiff had "significant degenerative scoliosis of the lumbar spine and spinal stenosis between L23 and L5/S1" but did not recommend surgery because of the potential scope of the problem. (Tr. 214-15). He referred Plaintiff to Augusto Hsia, M.D., for a second opinion. (Tr. 215).

On February 28, 2011, Caroline Koo, M.D. and Dr. Hsia, summarized Plaintiff's complaints as "midline low lumbosacral sharp stabbing low back pain" but with no numbness, tingling, or leg weakness. (Tr. 208). Plaintiff again reported physical therapy, NSAIDs, Percocet, and facet injections did not relieve his pain. (Tr. 208). On examination, Dr. Koo noted "toe/heel/tandem gait are normal", no atrophy or abnormalities, no loss of sensation, bilateral upper and lower extremity coordination as symmetric, no tenderness in the lumbrosacral spine, and negative Faber test bilaterally. (Tr. 209). Plaintiff's x-rays showed "advanced multi-level lumbar spondylosis with central and foraminal stenosis, [with] osteophytes, [and] scoliosis". (Tr. 209). Dr. Koo prescribed Lyrica, Ultram, and aquatherapy for pain management and suggested more aggressive non-surgical management, weight loss, and bariatric surgery. (Tr. 210).

For three months at the end of 2011, Plaintiff attempted physical therapy where he reported the exercises were helping reduce the pain but he was still having aching low back pain which returned after each session. (Tr. 319, 322, 327, 330, 332-33, 335, 337, 340).

Plaintiff returned to Dr. Hsia in April 2012, he observed no lower extremity motor defects, negative straight leg raise test, and normal range of motion. (Tr. 298). Dr. Hsia again recommended weight loss and back exercises, but continued Plaintiff's Ultram prescription. (Tr. 298). A month later, Plaintiff presented to Dr. Thomas with buttock pain and sciatica pain, he also recommended weight loss of at least 50 pounds to both relieve pain and to make Plaintiff a

4

viable surgical candidate. (Tr. 301). Again on examination, his gait was normal with no lower extremity weakness. (Tr. 301). Dr. Thomas ordered an epidural injection for pain. (Tr. 303). In June 2012, Dr. Thomas reported Plaintiff continued to have right leg pain and left side back pain and wanted to proceed with the epidural injection which was successful at reducing the pain for about a month. (Tr. 307, 391).

In September 2012, Plaintiff saw Dr. Schlenk again to discuss possible surgical options because the epidural injections had only minimal benefits. (Tr. 440). Dr. Schlenk observed antalgic gait which favored the right side, limited lumbar range of motion secondary to Plaintiff's complaints of pain, and a negative straight leg raise test. (Tr. 440). Dr. Schlenk advised that surgery would not be an option unless he could lose more than 50 pounds. (Tr. 441).

In late 2012 and early 2013 in anticipation of possible surgery, Plaintiff began seeing a nutritionist to assist him in losing weight which despite successes, was hampered by his irregular sleep schedule and low activity levels. (Tr. 365-69, 375, 383). In March 2013, Dr. Thomas noted Plaintiff had lost 40 pounds but was still experiencing some lower back pain and leg pain. (Tr. 363). Upon review of his radiology reports, Dr. Thomas observed no significant change had occurred to Plaintiff's spine since 2010. (Tr. 363). In May 2013, Plaintiff returned to Dr. Thomas for another epidural injection. (Tr. 437).

*Consultative Examination*

Plaintiff underwent a consultative physical examination by Kimberly Togliatti-Trickett, M.D. (Tr. 348). His muscle testing revealed normal strength in both upper extremities and normal range of motion in all areas but the dorsolumbar spine. (Tr. 348-51). On examination, Dr. Togliatti-Trickett found Plaintiff had normal ambulation, limited squatting ability due to complaints of pain, mild tenderness upon palpation, and limited range of motion in the lumbar

5

spine but normal range of motion in the cervical spine. (Tr. 361). He had normal motor strength, sensation, and reflexes in all extremities, and a negative straight leg raise test. (Tr. 361).

Dr. Togliatti-Trickett opined Plaintiff could continuously lift up to ten pounds but never over 21 pounds and could continuously carry ten pounds but could never carry over 21 pounds due to his limited spinal range of motion. (Tr. 352). Next, she opined Plaintiff could sit, stand, or walk for 30 minutes without interruption, could only sit, stand, or walk for one hour of an eight hour workday, and did not need a cane to ambulate. (Tr. 353). She did not explain her reasoning for these restrictions. (Tr. 353). She then concluded Plaintiff could continuously use both feet and hands for gross and fine manipulation. (Tr. 354). As to postural limitations, she restricted Plaintiff to occasionally climbing ramps, stairs, ladders, and scaffolds, and could occasionally balance, stoop, and kneel, but never crouch or crawl due to his limited mobility and spinal pain. (Tr. 355). She also restricted Plaintiff to occasionally working at unprotected heights and with moving machinery but assigned no other environmental limitations; again this restriction was due to his limited mobility and pain. (Tr. 356). Overall, she concluded Plaintiff was limited to a light or sedentary job due to his subjective complaints of pain and his limited lumbar spine range of motion. (Tr. 361).

***State Agency Examiners***

Anton Freihofner, M.D., opined Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, sit, stand, or walk for six hours in a workday, could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, and frequently balance. (Tr. 51-52). This opinion was based on Plaintiff's ability to heel and toe walk without pain, lack of lost sensation, lack of tenderness in the lumbosacral spine, and unremarkable findings in the bilateral upper and lower extremities. (Tr. 52).

6

On reconsideration, Plaintiff underwent a psychological consultative examination for claims of depression but the findings were normal (Tr. 289-95) and Joseph Edwards, Ph.D., opined no mental limitations for Plaintiff. (Tr. 61). Teresita Cruz, M.D., did not change the physical RFC opined by Dr. Freihofner. (Tr. 64).

*ALJ Decision*

In January 2013, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbosacral spine and obesity; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 13). The ALJ then found Plaintiff had the RFC to perform light work except that he must avoid climbing ladders, ropes, or scaffolds, and could perform only occasional climbing of ramps and stairs, and occasional stooping, kneeling, crouching, crawling, and balancing. (Tr. 15). Based on the VE testimony, the ALJ found Plaintiff could perform work as a cashier, fast food worker, or sales attendant operator; and thus was not disabled. (Tr. 18).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial

evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

8

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) he failed to properly evaluate and weigh the medical evidence of record and; (2) he failed to use the appropriate legal standard in evaluating Plaintiff's pain. (Doc. 15, at 1). Each assignment of error will be addressed in turn.

### *Medical Evidence*

Plaintiff's first assignment of error is twofold: first, he alleges that even though Drs. Koo, Hsia, and Schlenk did not author medical opinions, the ALJ failed to undertake the proper analysis with regard to their medical findings; and second, the ALJ erred in the analysis and weight given to Dr. Togliatti-Trickett, the consultative examiner. (Doc. 15, at 9-16).

As to Plaintiff's first argument, the Plaintiff relies on the reasoning of *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365 (6th Cir. 2013), arguing the ALJ must discuss and provide specific reasons to discount the medical opinions of treating physicians, Drs. Schlenk, Koo, and Hsia. (Doc. 15, at 10). He argues that each of these doctors was entitled to controlling weight for which the ALJ was required to provide good reasons before discounting their medical findings. However, this argument fails on its most basic ground; that is; these doctors never provided opinions, a fact that Plaintiff concedes. (Doc. 15, at 10).

A medical opinion is a "statement[ ] from physicians…that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairments(s), and your physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). When reviewing the citations provided by Plaintiff as proof that these doctors

9

provided medical opinions, it is clear they do not fit the definition. For example, Dr. Schlenk's finding that Plaintiff had spinal degeneration "decades beyond what one would expect to find for a 27-year old male" and a recommendation that surgery not be attempted; contains no opinion as to Plaintiff's ability to work or care for himself and includes no physical restrictions. Similar statements about Plaintiff's condition made by Drs. Schlenk, Koo, and Hsia throughout the record likewise contain no analysis as to Plaintiff's ability to work or any potential restrictions his disease may cause; rather they are focused on treatment options.

It is important to distinguish between the divergent purposes of medical records−treatment and medical opinions−records of specific functional limitations, because the analysis required for a medical opinion is much stricter. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) (noting a "distinction between a doctor's note for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work."); *Orr v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007)("[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel-not to provide evidence for disability determinations"); *Vock v. Comm'r of Soc. Sec.*, 2014 WL 4206885, *11 (E.D. Mich); *Mohssen v. Comm'r of Soc. Sec.*, 2013 WL 6094727, *9 (E.D. Mich.)(finding medical notes do not constitute a medical opinion). The evidence of record demonstrates that Drs. Schlenk, Koo, and Hsia never provided medical opinions that the ALJ was required to analyze under the good reasons rule. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009).

Contrary to Plaintiff's argument, the ALJ did not err by declining to discuss each piece of medical evidence submitted by the Plaintiff, especially since Drs. Schlenk, Koo, and Hsia did not provide medical opinions. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 195, 199 (6th Cir. 2010)(an "ALJ can consider all the evidence without directly addressing in his written decision

every price of evidence submitted by a party."). The ALJ's discussion of the evidence did not ignore the findings of Drs. Schlenk, Koo, and Hsia, but, instead, condensed them into a summary of the findings from the Cleveland Clinic, the entity for which all the doctors worked. (*See* Tr. 16). Considering the above, the ALJ did not err in his analysis of the medical evidence provided by Drs. Schlenk, Koo, and Hsia because they did not provide opinions pursuant to the regulations.

Equally as unpersuasive are Plaintiff's citations to his own subjective comments as evidence that Drs. Schlenk, Koo, and Hsia found him to be disabled. (Doc. 15, at 12). However, the Court will discuss Plaintiff's subjective complaints in the second assignment of error and declines to do so here. It is sufficient for these purposes to conclude that Plaintiff's subjective complaints to a doctor are not medical opinions entitled to weight. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010); *see also Holmes v. Astrue*, 2010 WL 1258080, *8 (N.D. Ohio)(concluding that "if an ALJ finds…subjective reports to be unworthy of complete belief, any medical opinion based on such complaints may be also be discounted.").

*Non-Treating Source Opinion*

Plaintiff next argues the ALJ did not give appropriate weight to consultative examiner, Dr. Togliatti-Trickett's opinion. Consultative examiners are considered non-treating sources because they are physicians who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with him. 20 C.F.R. § 416.902. Therefore, their opinions must be weighed but are not given deference. § 416.927(d)(2); SSR 96-8p.

In weighing the opinion of a non-treating source, the ALJ must evaluate the medical opinion based on certain factors. *Rabbers,* 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the

nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. Additionally, the regulations support medical opinions with thorough explanations that have considered all pertinent evidence. § 404.1527(c)(3). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (conclusory statements from physicians, without support from specific documents, are a valid reason for discounting an opinion).

Here, the ALJ discounted the weight of Dr. Togliatti-Trickett's opinion because it was inconsistent with and unsupported by her examination notes and was partially based on Plaintiff's subjective complaints rather than her objective findings. (Tr. 16).  Particularly, the ALJ noted Plaintiff's gait was normal, he maintained full strength, sensation, and reflexes, had no muscle atrophy or spasm, and a negative straight leg raise test. (Tr. 16, 361). The ALJ specifically noted the inconsistent examination findings which led him to reduce the weight of Dr. Togliatti-Trickett's opinion.

The ALJ also noted that Dr. Togliatti-Trickett did not cite any particular medical findings in support of her opinion that Plaintiff could only sit, stand, or walk for a total of one hour per day, a deviation from all other parts of her RFC opinion which provided supporting information. (Tr. 16, 352-57). Thus, the ALJ's conclusion that the basis for this restriction was Plaintiff's subjective reporting is reasonable in light of his testimony elsewhere that espoused a similar restriction. (Tr. 32). A review of the ALJ's opinion demonstrates that he provided adequate reasoning and explanation as to why he did not fully credit Dr. Togliatti-Trickett's opinion and thus, substantial evidence exists to support his conclusion. 20 C.F.R. § 404.927(b), *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

*Credibility*

Next, Plaintiff argues the ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's complaints of pain, particularly that he did not utilize the regulatory factors as required by 20 C.F.R. § 416.929(c)(3). (Doc. 15, at 16).

Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms and may make a finding based on consideration of the entire record. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992); SSR 96-7p, 1996 WL 374186, *1.

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding her pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: 1) objective medical evidence of an underlying medical condition; or 2) objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs*, 801 F.2d 847, 853 (6th Cir. 1986). In evaluating credibility of Plaintiff's complaints an ALJ considers certain factors:

(i) [A claimant's] daily activities;

13

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;

(vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Throughout the opinion the ALJ noted inconsistencies between Plaintiff's subjective complaints and the objective medical evidence such as the lack of evidence of "nerve root compression accompanied by sensory or reflex loss", normal gait, full strength and range of motion in the lower extremities, and negative straight leg raise tests. (*See* Tr. 15-16, 209, 298, 301, 303, 361, 440). These inconsistencies undermined Plaintiff's complaints of severity despite

the fact that medical testing confirmed the existence of degenerative disc disease with multi-level spondylosis. (Tr. 16, 209). The ALJ also discussed the multitude of treatments Plaintiff underwent, including medication, use of a TENS unit, physical therapy, and injections. (Tr. 15). While Plaintiff reported these were unsuccessful at treating his pain, the record does not wholly support those complaints. Reports from the physical therapist noted pain reductions after every session Plaintiff attended and Plaintiff reported improved pain management multiple times following epidural injections. (Tr. 16, 319, 322, 327, 330, 332-33, 335, 337, 340, 391, 409, 437). Lastly, the ALJ noted a physical therapy record which reported Plaintiff's "deconditioning" was a contributor to his pain. (Tr. 17).

After reviewing the record and the ALJ's decision, the Court finds the ALJ had substantial evidence to support his credibility determination. While the medical tests did prove the existence of degenerative disc disease, they also demonstrated that the condition had not worsened throughout the relevant time period. (Tr. 226, 363). The ALJ considered the entire record and discussed inconsistent objective medical evidence, activities of daily living, treatment attempts, and doctor recommendations, all relevant regulatory factors for making a credibility determination. (Tr. 15-17); 20 C.F.R. § 416.929(c)(3). Certainly, it can be demonstrated through the record that Plaintiff consistently complained of pain however, the ALJ noted sufficient contradictory evidence to support his conclusion. Even if Plaintiff's consistent subjective complaints were enough, substantial evidence exists to support the ALJ's reasonable conclusion that Plaintiff's complaints of pain were not entirely credible. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the

undersigned finds the Commissioner's decision denying SSI is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

                                               s/James R. Knepp II
                                            United States Magistrate Judge